# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JEFFREY STAHLER,** | ) |
| | ) No. 13 CV 1909 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| **ANTENNA SYSTEMS, INC.,** an Illinois Corp., **ANTENNA FACTORY, INC.,** an Illinois Corp., **ANTENNA SYSTEMS & SOLUTIONS, INC.,** an Illinois Corp., **MICHAEL TADROS,** an individual, and **GEORGE TADROS,** an individual, | ) ) ) ) ) ) ) |
| | ) May 22, 2015 |
| Defendants. | ) |

## MEMORANDUM OPINION and PRELIMINARY INJUNCTION ORDER

Plaintiff Jeffrey Stahler, on behalf of himself and the opt-in plaintiffs Jack A. Lawson and Timothy Bolton, submitted an Ex Parte Motion for Temporary Restraining Order ("Ex Parte Motion") and an Emergency Ex Parte Motion for Substitution of Parties, Entry of an Order of Contempt, Temporary Restraining Order ("TRO"), Entry of an Asset Restraining Order, and Expedited Discovery Order ("Ex Parte Motion for Substitution"), against Defendants[1] Antenna Systems, Inc., Antenna Factory, Inc., Antenna Systems & Solutions, Inc., and Michael Tadros ("Mr. Tadros"), and against Joyce Tadros ("Mrs. Tadros") and Spectrawave Communications, Inc. ("Spectrawave") (collectively, "Respondents").

---

[1] This Order does not pertain to Defendant George Tadros.

Having considered the court's judgment, Ex Parte Motion, including the affidavits of Jezieel Cortes, Jeffrey Grant Brown, and Carol Coplan Babbitt, the exhibits attached thereto, Ex Parte Motion for Substitution, including the exhibits attached thereto, and representations of Plaintiff and Respondents during in-court hearings, this court now confirms the conversion of the TRO to a Preliminary Injunction:

## Procedural History

On April 8, 2015, the court granted Plaintiff's Ex Parte Motion and entered a TRO. Under 28 U.S.C. § 1292(a)(1), a temporary restraining order "is deemed a preliminary injunction and so is appealable" if kept in force for more than 20 days without the parties' consent. *Chi. United Indus., Ltd. v. City of Chi.*, 445 F.3d 940, 943 (7th Cir. 2006). Respondents did not consent to the continued enforcement of the TRO. Therefore, the TRO converted to a preliminary injunction on April 29, 2015.

On May 20, 2015, Mr. Tadros advised the court by telephone that both he and his wife, Mrs. Tadros, had filed for bankruptcy in South Carolina, along with their company, Spectrawave. Mr. Tadros represented that he would mail the court a copy of the bankruptcy petition. As of the date of this Order, the court has not received the petition by mail. On May 21, 2015, however, Plaintiff filed a Notification of Bankruptcy Filing with the court, confirming that Mr. Tadros, Mrs. Tadros, and Spectrawave Communication Systems, Inc. filed a Chapter 7 bankruptcy petition in South Carolina. (R. 120, Notification of Bankruptcy Filing.) The court understands

2

that such a petition may trigger an automatic stay of this court's post-judgment proceedings against certain Respondents pursuant to 11 U.S.C. § 362(a).[2] This court respects and is not seeking to circumvent such a stay. Because this court entered the TRO against Respondents on April 8, 2015, the TRO was deemed a preliminary injunction as of April 29, 2015—well before the bankruptcy petition. Therefore, for the following reasons, the court confirms the entry of the Preliminary Injunction as to Respondents:

**Facts**

Respondents have not introduced, or indicated any intention to introduce, evidence to controvert the material facts set forth by Plaintiff in his Ex Parte Motions. Therefore, the court accepts the recitation of facts set forth by Plaintiff solely for purposes of the Preliminary Injunction Order. (E.g., R. 98, Ex Parte Motion for Substitution of Parties at 4-12.) In short, the parties executed a Settlement Agreement on May 20, 2014—and, for Defendant George Tadros, on June 15, 2014. (Id. at 3.) The Settlement Agreement included a provision for the entry of a Consent Judgment in the event of default. (Id. at 4.) Defendants defaulted on their first payment. (Id.) Consequently, Plaintiff sought Judgment against Defendants, which the court entered on July 8, 2014, in the amount of $125,000. (R. 77, Judgment.)

---

[2] As a result of the bankruptcy filing by Mr. and Mrs. Tadros and Spectrawave, this court declines to rule on the remaining issues in Plaintiff's Ex Parte Motion for Substitution, including the request for substitution of parties and a contempt order, until the automatic stay is lifted and/or deemed non-applicable to certain Respondents for purposes of these proceedings.

3

Since entry of the judgment, Plaintiff has sought to enforce the judgment. (R. 98, Ex Parte Motion for Substitution of Parties at 4.) After Defendants' default, Plaintiff retained a private investigator and discovered that Defendants had ceased their operation and the individual Defendants had left town. (Id.) Plaintiff subsequently discovered facts showing that Defendants had relocated to South Carolina but were continuing the same business under a new corporate entity, Spectrawave Communications, Inc. (Id. at 5.) Indeed, Plaintiff secured an affidavit from Defendants' former employee Jezieel "Jesse" Cortes, lead salesperson and technical engineer for Defendants from 2009 through mid-2014, attesting that:

- Spectrawave was "an exact replica" of the Defendant corporations, (id. at Ex. 5 ¶ 6(a));

- Spectrawave "performed the same services, sold the same products and was owned and managed by the same people" as the Defendant corporations, (id.);

- Mr. Tadros "changed the name and formulated a new corporation solely to escape legal obligations, including a judgment in this lawsuit in Illinois," (id.);

- "In or about February of 2014, Mr. Tadros announced that he wanted to move out of the state of Illinois to '[expletive] everyone' involved in this (above-captioned) lawsuit" and that he "wanted to 'drag the proceedings out' as long as he could to avoid payment" in this case, (id. at Ex. 5 ¶ 6(b));

- "[T]he Tadros family (including George, Michael and Joyce) started running the same invoices through Spectrawave instead of Antenna Systems or the [other Defendant corporations], and, instead funneled all revenue into Spectrawave, the South Carolina entity," (id. at Ex. 5 ¶ 6(e));

- "The Tadros's [sic] began physically moving all inventory and office supplies on hand with the [Defendant corporations] in

4

    Schaumburg[, Illinois] to South Carolina, via trucks and trailers," (id. at Ex. 5 ¶ 6(f)); and

- "George [Tadros] showed me the warehouse [in South Carolina] that the Tadros's [sic] eventually opened, and that contained all of the same products they had in inventory in Schaumburg, and that they intended to use in the 'new' business, which really was just a continuation of the Schaumburg business in a different state," (id. at Ex. 5 ¶ 6(g)).

Respondents have not denied or otherwise refuted Cortes's testimony.

## Analysis

### A. Jurisdiction

There is no dispute that the court has jurisdiction over the subject matter of the case and parties for purposes of enforcing the judgment. (R. 77). Mrs. Tadros argues, however, that this court lacks jurisdiction over Respondents Spectrawave and herself. (R. 114, Am. Mot. to Dissolve Ex Parte TRO at 5.) To that end, Mrs. Tadros submitted an exhibit showing that Spectrawave is a South Carolina corporation. (Id. at Ex. 1.) The court finds that Mrs. Tadros's arguments as to Spectrawave are invalid because the corporation must be represented by a licensed attorney in good standing, and Mrs. Tadros is not an attorney. *See Strong Delivery Ministry Ass'n v. Bd. of Apps. of Cook Cnty.*, 543 F.2d 32, 33-34 (7th Cir. 1976).

In any event, the court has jurisdiction over Spectrawave as a successor to the Defendant corporations. A district court may invoke the successor liability theory to grant equitable remedies. *EEOC v. N. Star Hospitality, Inc.*, 777 F.3d 898, 901 (7th Cir. 2015). In cases involving "more than one corporate entity, successor liability is 'the default rule . . . to enforce federal labor or employment

5

laws.'" *Id.* (quoting *Teed v. Thomas & Betts Power Solutions, Inc.*, 711 F.3d 763, 769 (7th Cir. 2013)). Without successor liability, "the victim of the illegal employment practice is helpless to protect his rights against an employer's change in the business." *N. Star*, 777 F.3d at 901-02 (quoting *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985)). Additionally, if the successor company has notice of its predecessor's obligations, "there is a presumption in favor of finding successor liability." *N. Star*, 777 F.3d at 902 (quoting *Worth v. Tyler*, 276 F.3d 249, 260 (7th Cir. 2001)). For federal employment cases, courts examine the following factors to determine successor liability:

1. whether the successor had notice of the pending lawsuit;

2. whether the predecessor could have provided the relief sought *before* the sale or dissolution;

3. whether the predecessor could have provided relief *after* the sale or dissolution;

4. whether the successor can provide the relief sought; and

5. whether there is continuity between the operations and work force of the predecessor and successor.

*N. Star*, 777 F.3d at 902 (emphasis in original).

Successor liability is the "default rule" to enforce Plaintiff's underlying claims of violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (the "FLSA"). *N. Star*, 777 F.3d at 901; (R. 1, Compl. ¶ 1.) Plaintiff has submitted evidence showing that, under the five-factor successor liability test articulated by the Seventh Circuit, Spectrawave is a successor to the Defendant corporations. Under factor one, there can be no dispute that Spectrawave had notice of this lawsuit

6

because Mr. Tadros is one of the Defendants in this case and a "key actor" for Spectrawave. *N. Star*, 777 F.3d at 902. Cortes's affidavit shows a clear connection between Mr. Tadros and Spectrawave. (R. 98, Ex Parte Motion for Substitution of Parties at 5-7 & Ex. 5 ¶¶ 6(a)-(h).) Moreover, Plaintiff supplied the court with a printout of the "About Us" page from early versions of Spectrawave's website, listing Mr. Tadros's personal telephone number as Spectrawave's contact number. (Id. at 5 & Ex. 6.) Spectrawave therefore was on notice of the judgment entered in this case.

Under factor two, Defendant corporations could have provided the relief sought before they ceased to operate and diverted income and assets to Spectrawave. Plaintiff provided evidence that Defendant Antenna Systems, Inc. received regular deposits in its bank account from January to July 2014. (Id. at 9 & Ex. 14.) Cortes also provided sworn testimony that Defendants re-directed revenues and moved assets to Spectrawave to evade the judgment entered in this case. (Id. at Ex. 5 ¶¶ 6(a)-(h).)

As for factor three, there is no doubt that Defendants could not have satisfied the judgment owed to Plaintiff after they had emptied their coffers. (Id.)

Factor four "is a goes without saying condition, not usually mentioned," according to the Seventh Circuit. *N. Star*, 777 F.3d at 903. In any event, financial statements detailing Spectrawave's revenues until the entry of the TRO show that Spectrawave can provide the relief sought. Indeed, Plaintiff pointed to Suntrust account statements showing that Spectrawave received $217,686.58 in the first three months of 2015. (R. 110, Pl.'s Reply at 2; R. 108, Suntrust Account Stmts.)

7

Finally, factor five further supports a finding of successor liability because Plaintiff presented evidence showing the continuity between the operations and key actors of Defendant corporations and Spectrawave. (R. 98, Ex Parte Motion for Substitution of Parties at 5-7 & Ex. 5 ¶¶ 6(a)-(h).) Taken together, all five factors weigh in favor of successor liability.

Furthermore, under Illinois successor liability law,[3] when one corporation transfers assets to another, the corporation receiving the assets may be liable for debts or liabilities of the transferor corporation where, for example, "the purchaser is merely a continuation of the seller" or "the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *GMAC, LLC v. Hillquist*, 652 F. Supp. 2d 908, 918 (N.D. Ill. 2009). Plaintiff presented sufficient evidence that Respondents have engaged in a concerted effort to conceal and dissipate Defendants' assets to Plaintiff's detriment. (R. 98, Ex Parte Motion for Substitution of Parties at 4-7.) Respondents did so in part by creating a South Carolina corporation that was merely a continuation of Defendant corporations. (Id.) Furthermore, Respondents unlawfully transferred Defendants' assets to

---

[3] The parties in this case were Illinois residents and/or Illinois corporations. (R. 1, Compl. ¶¶ 4-7.) Moreover, the underlying conduct that allegedly was unlawful occurred in Illinois. (R. 1, Compl. ¶ 3.) None of the parties or Respondents has argued that South Carolina law applies here. Nonetheless, South Carolina successor liability law is not materially different from Illinois law for purposes of resolving this dispute. *See, e.g.*, *Walton v. Mazda of Rock Hill*, 376 S.C. 301, 305-06 (S.C. Ct. App. 2008) ("[A] successor company is not ordinarily liable for the debts of a predecessor company under a theory of successor liability unless . . . (c) the successor company was a mere continuation of the predecessor company[] or (d) the transaction was fraudulently entered into for the purpose of wrongfully denying creditor claims.").

8

Spectrawave for the fraudulent purpose of avoiding liability for Defendants' obligations to Plaintiff. (Id. at 5-7) Respondents did not submit any evidence to refute Plaintiff's evidence. Given that there are no genuine issues of material fact, the court finds—for purposes of this order only—that Spectrawave is a successor to the Defendant corporate entities and cannot escape its obligations to Plaintiff.

With respect to Mrs. Tadros, she avers that she has been a resident of South Carolina for more than a year. (R. 114, Am. Mot. to Dissolve Ex Parte TRO at 5.) The court on May 8, 2015, ordered Plaintiff to respond to the jurisdictional issue raised as to Mrs. Tadros on or before May 22, 2015. (R. 115, Order of May 8, 2015.) Plaintiff did not file a response as ordered in light of Mrs. Tadros's pending bankruptcy petition but is not conceding this point. (R. 120, Notification of Bankruptcy Filing.) The court will address this jurisdictional issue as to Mrs. Tadros if the automatic stay is lifted in the bankruptcy proceedings.

**B.     Preliminary Injunction Order**

Plaintiff has satisfied the standard for the issuance of a preliminary injunction, which is the same standard that applies to the issuance of a TRO. *See Crawford & Co. Med. Benefit Trust v. Repp*, No. 11 CV 50155, 2011 WL 2531844, at *1 (N.D. Ill. June 24, 2011). The party seeking relief must show "(1) no adequate remedy at law and . . . irreparable harm if a preliminary injunction is denied and (2) some likelihood of success on the merits." *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011). If the moving party satisfies these conditions, "the district court weighs the factors against one another, assessing whether the balance of harms

favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id.* The more likely the moving party is to succeed on the merits of its claims, the less harm it must show as to the nonmoving party or the public if relief were to be granted. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Here, Plaintiff has demonstrated a substantial likelihood of success on the merits of his claims to enforce the Judgment as to Defendants and Spectrawave. Indeed, the parties already agreed to the Judgment in this action. (R. 77.) As explained above, that Judgment extends to Spectrawave as successor to the Defendant corporations.

Given that Plaintiff is likely to succeed on the merits, the court next considers whether Plaintiff will suffer irreparable harm without a preliminary injunction and whether Plaintiff has an adequate remedy at law. Plaintiff has been trying to collect on the judgment for nearly a year, but to no avail thus far. (R. 98, Ex Parte Motion for Substitution of Parties at 1-4.) In the meantime, Plaintiff has shown that Respondents have taken elaborate steps to evade the judgment and to hide or dispose of assets. (Id. at 4-7.) Thus, unless Respondents are preliminarily enjoined by this Order, there will be immediate and irreparable harm to the court's ability to grant effective relief for Plaintiff to satisfy the judgment.

As the court explained in the TRO, the resulting harm to Plaintiff in not granting the relief sought would be far greater than any injury this relief will inflict

10

upon Defendants and Spectrawave, as successor to Defendant corporations, and it is in the public interest to grant this preliminary relief. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). After entry of the TRO, this court repeatedly invited Spectrawave to show how, if at all, Paragraph 1-f of the TRO might be amended to ensure that Spectrawave could continue its business operation, while at the same time protecting against unlawful diversion of Spectrawave income away from discovered bank accounts. (See, e.g., R. 116, Tr. of Apr. 14, 2015 Proceedings at 8; R. 112, Apr. 23, 2015 Order.) To date, the court has not received any papers from Spectrawave or Mrs. Tadros showing what relief, if any, might be needed to allow Spectrawave to continue to operate or providing assurances that Spectrawave is not unlawfully diverting income to evade payment of the judgment owed to Plaintiff. When this court entered the TRO and allowed the TRO to convert to a preliminary injunction, Spectrawave had not filed for bankruptcy or indicated that such a filing would be necessary in light of the injunctive relief granted. And the evidence pointed to by Plaintiff showed a healthy revenue stream to Spectrawave in the first three months of 2015. (R. 110, Pl.'s Reply at 2; R. 108.) The court therefore had good cause for allowing the TRO to convert to a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(b). *See Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010) (affirming district court's grant of preliminary injunction where targeted parties took elaborate steps to evade judgment creditor and conceal and dispose of assets).

11

Accordingly, the court hereby finds and orders that:

1. This court has jurisdiction over the subject matter of this case, and there is good cause to believe it has jurisdiction over Respondents.

2. Venue lies properly with this court pursuant to 29 U.S.C. § 1391 because the allegedly unlawful conduct occurred in this district. (R. 1, Compl. ¶ 3.)

3. Respondents, their officers, agents, servants, employees, attorneys, any business entities and/or persons controlled directly or indirectly by Respondents, and any persons acting in active concert or participation with them who receive actual notice of this Order by personal service or otherwise are hereby permanently enjoined and restrained from directly or indirectly:

   a. Transferring, converting, selling, concealing, assigning, spending, withdrawing, perfecting a security interest in, or otherwise disposing of any assets wherever located that are owned, controlled, or held by, or for the benefit of, in whole or in part, any Respondent, or in the actual or constructive possession of any Respondent;

   b. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name or for the benefit of any Respondent, or subject to access by any Respondent or under the direct or indirect control of any Respondent, without providing Plaintiff and this court with prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Order;

c. Cashing any checks or depositing or processing any payments from customers of Respondents;

d. Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Respondent;

e. Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Respondent or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Respondent;

f. Transferring any funds or other assets subject to this Order for attorney's fees or living expenses; provided however that, notwithstanding the above, any Respondent may pay, from funds subject to this Order, reasonable, usual, ordinary, and necessary living expenses and attorney's fees, not to exceed $1,000, without written prior approval by the Plaintiff or as otherwise authorized by this court;

g. Creating, operating, or exercising any control over any business entity without first providing Plaintiff and this court with a written statement disclosing the name of the business entity, its address and telephone number, its officers, directors, principals, managers, and employees, and a detailed description of the business entity's intended activities; and

h. Destroying, mutilating, concealing, altering, or otherwise disposing of any documents or records of any kind that relate to the business

13

practices or business and personal finances of the Respondents until further order of the court.

4. Any financial or brokerage institution, escrow agent, title company, commodity trading company, entity, trust, or person that holds, controls or maintains accounts or assets of, or on behalf of, or for the direct or indirect benefit of, any Respondent, that has been served with a copy of this Order or otherwise has actual or constructive knowledge of this Order, shall:

    a. Hold and retain within its control and prohibit the transfer, conversion, sale, withdrawal, removal, assignment, encumbrance, or other disposal of any such asset except by further order of this court;

    b. Deny Respondents access to any safe deposit box titled in any Respondent's name, individually or jointly, or otherwise subject to access by any Respondent; and

    c. Upon request by Plaintiff, promptly provide Plaintiff with copies of all records or other documentation pertaining to each such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

5. Respondents shall allow Plaintiff, within five (5) business days after receipt of actual notice of this Order, as long as any applicable bankruptcy stay is

lifted, to inspect and copy any documents and records in Respondents' possession or control relating to any financial accounts owned or controlled by Respondents, including their officers, agents, servants, employees, attorneys, and any persons acting in active concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including merchant account providers, payment providers, third-party processors, and credit card associations, from February 2014 to the present, if not already provided.

6. Respondents shall immediately provide a copy of this Order to each affiliate, subsidiary, division, sales entity, successor, assignee, officer, director, employee, independent contractor, client company, agent, attorney, spouse, and representative, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and this court with a sworn statement that Respondents have complied with this provision of the Order, which statement shall include the names and addresses of each such person or entity who received a copy of this Order, once any applicable bankruptcy stay is lifted.

7. Plaintiff shall continue to maintain his deposit with the court of ten thousand dollars ($10,000) as security, either cash or surety bond, to be paid by Plaintiff or Plaintiff's counsel's Interest on Lawyers Trust Account, which the court determines is adequate for the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder.

15

## Conclusion

For the foregoing reasons, the court hereby confirms the conversion of the TRO to a Preliminary Injunction, with certain modifications in light of the bankruptcy petition by certain Respondents. This Order does not materially alter the Preliminary Injunction that went into effect on April 29, 2015.

**ENTER:**

**Young B. Kim
United States Magistrate Judge**